The court's docket this morning is 518-0163 Herron v. Campbell Hausfeld, LLC, et al. And before we begin, I've been told, the court's been told, that one person has been designated for the appellants. Is that right? That's correct. Okay. It may be that some of the justices have questions that relate to other individuals. This goes for both sides. So if you need to defer to co-counsel, for example, please feel free to do that to answer our questions, should that become necessary. Okay? All right. Whenever you're ready to proceed. May it please the court. Counsel. As you're well aware, this is a forum non-convenience challenge. The defendants, appellants in this case, have asked to move the case from St. Clair County, where there are no facts that connect this case to St. Clair County, instead to Williamson County, which is the location where the accident occurred, where most of the witnesses are. There seems to be some discrepancy in the record. This did not occur in Williamson County, is what we're being told by the third-party co-defendants. You are absolutely correct. This happened in Saline County, within, I'm told, a few feet of Williamson County. It happened outside Carrier Mills. And from what we're told, the building was literally a few feet away from Williamson County. I'm familiar with Carrier Mills and the Williamson County line. Carrier Mills is not a few feet from the Williamson County line. It's outside Carrier Mills. Carrier Mills is the mailing address for the building. But from what we're told, the facility, which is outside the city limits, is very close to Williamson County. When you say a few feet, what does that mean? From what I'm told, and I have not been to the site, but from what I'm told, you can easily walk from one to the other. And if I'm correct, I believe the facility actually owned property in Williamson County as well. So it was, from what we're told, it was straddling the line basically between Saline and Williamson County. But the building where the accident occurred was actually in Saline County. So the property that you refer to that was owned in Williamson County is owned by that company. That's what we understand. Is it all connected? Yes. So also that facility had maybe a parking lot that extends into Williamson County or a storage shed or something of that nature. Yes, that's what I'm going to believe. I do not know the specific facts, but that's what we've been told. But you're absolutely right. It happened in Saline County, not Williamson County. What you just explained to Justice Barbaras is not in the record. I understand that. Okay. So that's not something we can consider because nobody's put that in the record that I saw. That is correct, Your Honor. Okay. So my question to you right off the bat is why did the defendants want Williamson as opposed to Saline? It doesn't really matter that much between Williamson County and Saline. They are adjacent. The reason that we've selected Williamson County is because it was a Williamson County fire department that responded to the accident. Most of the witnesses, we understand, live in Williamson County. Williamson County is slightly larger than Saline County. And in terms of convenience, we understood that Marion was more convenient for people to get to. Also, I believe the facility itself is physically closer to the courthouse in Williamson County than the courthouse in Saline County. But to be honest, and I think we've said this in the record, if we haven't said it in the record, and now we've said it, at the circuit court level, Williamson or Saline would be fine with the defendants. Either one of those is much more convenient to the facts at issue in the case, to the location of the accident, and to the witnesses as well as to the treating physicians for the plaintiff. The difference that we have in this case from all the other cases that are cited and they've been discussed pretty thoroughly in the briefs is that no fact other than the basis for technical jurisdiction in St. Clair County and the plaintiff's attorney's office connect this to St. Clair County. That makes this different than every other case where the plaintiff's choice of forum has been selected because even as the Langenfeld case noted, one of the basic differences it had with Dowdy as well as others was that in Langenfeld as opposed to Dowdy, there was some factual connection to the forum that was chosen. Now, we're not saying here that venues are bothered. The briefs have talked about three retail stores for Sherwin-Williams being located in St. Clair County. That gives you venue. The three retail stores from a nationwide retailer does not make it that retailer's home county or county of residence. It simply qualifies it under the venue statute. Let me ask you, and I've read the briefs, but I'll refresh my memory in that regard. I believe there was a definitive statement in your brief saying that there's no way any of the products or any of the services that those Sherwin-Williams stores in St. Clair County provide were involved in this accident. If that's what it said, I apologize. I don't think that's quite right. We have no evidence that any of the three stores, any of the three Sherwin-Williams stores in St. Clair County sold any of the equipment that was involved in the accident. We do know that one of the pieces that may have been involved in the accident, the Campbell Hausfeld gun, was purchased in Marion in Williamson County. At a Sherwin-Williams store? Pardon me? At a Sherwin-Williams store? That's what we understand, yes. We have an invoice showing that. Why hasn't Sherwin-Williams moved to Dismiss as the distributor under the product liability statute? Yes, Your Honor. Because of this, we know who manufactured the gun, Campbell Hausfeld. We know who manufactured the sprayer, Praco, my client. The third piece of equipment involved was the hose. The hose that connects the sprayer and the gun also needs to be grounded as well so that when static electricity builds up at the gun, it can be bled all the way back through the hose, through the pump, and then into some ground, whether it's plugged in or whether it's attached to ground. We don't know who manufactured the hose, but we do have the allegation that it was sold by Sherwin-Williams. I know, but then they would just be a pass-through defendant. Right, pass-through defendant. Why haven't they moved to Dismiss, which would eliminate Bennu? Because we don't know who made the hose. There's no way to pass it through. Sherwin-Williams doesn't know if they made a hose? Sherwin-Williams didn't make the hose. They're simply a distributor, but we don't know. That's my question. Why haven't they moved to Dismiss, which would eliminate Bennu and we wouldn't be here? I understand that they can't move to Dismiss if they can't identify the manufacturer. They have to have somebody to pass it on to. And since we don't know what entity actually manufactured the hose, it was too badly destroyed for us to determine when we take a look at it. Sherwin-Williams has nobody to pass that on to, which is why they're still stuck as a retailer. Had it been a Greycoat hose or a Campbell Houseville hose, we would have done that. I'm sure Sherwin-Williams would have done that. So what you're saying is that Sherwin-Williams may have manufactured that hose. I mean, nobody knows at this point. I don't think anybody's saying Sherwin-Williams manufactured it. It's just that we don't know who did. So you're saying the statute can't be used because there's nobody to point it to. That's my understanding, that in order to take advantage of and pass your statute, you have to be able to pass it on to some entity. And at this point, we don't know who that is. We probably can't find out based on the condition of the hose. The allegations in plaintiff's original complaint, as well as their amended complaint, have always been product liability. And one of the questions I have for you is how you distinguish this case from the Moen case. Yes, Your Honor. Plaintiff has alleged product liability, but plaintiff has also alleged negligence. Alleged negligence counts against three original defendants, A1 Buildings, Mr. Devis, and Mr. Brown, and they're all residents of Williamson County. Two of them are electricians. Yes. The electricians have withdrawn their form nonconvenience motions. Yes. They're willing to have their trial in St. Clair County, correct? I don't know if they've been willing, if they've said they're willing to do anything. I understand that they said they wouldn't complain about traveling to St. Clair County, and they're not parties to the motion. Yes, that's correct. Well, they had form nonconvenience motions, but they've withdrawn them. I believe that's correct. Okay. So two of the defendants who are intimately involved with hooking up with this hose and the allegations of negligence as opposed to product liability have already said we're withdrawing our motion, correct? That's correct. So we're left really with Sherwin-Williams, who may or may not be just the distributor, as well as the product manufacturers. These are the defendants. Yes. And the allegations against the existing defendants go to product liability. Defective conditions, if you will. Let me make it more clear. Yes. Okay. So now tell me how this case would be different than the Mullen case, please. Yes. Let me flesh that out a little bit. The reason that the plaintiff sued both under product liability theory and under negligence is because the products involved are groundable. They're meant to be used so that they are grounded. Again, the hose with the gun attached on one end and the sprayer attached on the other are all meant to allow static electricity to bleed back and then to be taken to ground where they cannot build up and spark something that could ignite a gas cloud of flammable gas. So all the products are made to be grounded. If it is an electrical pump, you ground it by sticking the plug in with that third prong that grounds it. So there you bleed off all of the static, and there is no static buildup. You don't have the explosion hazard. If you don't have a pump that's plugged in, if you have something that's run by air or gas or something else, you clip a cord to a grounding post, something that's stuck in the ground in the building so that the charge won't build up and will continue to bleed down. Everyone knows that you have to have things grounded when you're working with the type of material that Mr. Heron is working with. So everyone expected that it was grounded. Grounding would have been done by the electrician. Well, that's the question, and that's why negligence is completely wrapped up in this. And that's why I asked you originally. You're a manufacturer of not the gun but a piece of the gun. A piece of the, yeah, the whole product. The electricians who would have, quote, grounded this and done as you just explained have withdrawn their form of nonconvenience motion. A1 Buildings is dismissed. Is that correct? They were dismissed from the original action. They're in as a third-party defendant. Right, you third-partied them in. But do you agree that under form of nonconvenience, the wishes of the third-party defendants are not as great as the direct defendants? That is correct, Your Honor. That's what we understand. Okay. So A1 Buildings was dismissed by the plaintiffs. So, again, I come back to the fact that we are here about manufacturers in a product liability slash negligence claim, and I still haven't heard you talk about Mowat. Okay. The difference in Mowat was that it was a pure, I mean, it was pure product liability. There's no negligence aspect in the Mowat case, and I understand that that's the plaintiff's argument and that's different, but in the way that this was played out originally and the way that the jury will have to hear the facts in order to understand is that they'll have to find out why this was not grounded, whether it was not grounded because it wasn't put in place that way by Caterpillar in the first place, whether the electricians were supposed to ground it and didn't, whether A1 Buildings, as a builder, was supposed to ground the structure or not. They said that they specifically were not, and they provided documents that they weren't supposed to. Also, whether there was a way to ground this or whether there was a system in place, an actual physical thing in place that you could clip the pump to so that it could ground, rather than going through grounded electrical equipment. This is what your proof will be, too, against the third-party defendants, the electricians who, again, have withdrawn their form. A1 Buildings is a third-party defendant. In fact, is it true that this building and this whole facility is no longer owned by the same defendant but is now owned by Fabig? Yes. So even when it comes down to the fact that you want in this facility, you're going to have to go to a totally different entity, Fabig, as opposed to Caterpillar, I guess. Yes. And you're going to have to issue subpoenas and you're going to have to take depositions, and where is Fabig located? The issues, the subpoenas that were issued... You want to get into the building. For example, a jury view. You haven't third-partied Fabig in because they can't possibly be a defendant. They're a subsequent purchaser. Correct. So where are they located? I don't know where Fabig is based, but, again, the facility that we're looking at and where we understand the documents were kept regarding the employees are all there on the site at the border of Williamson and Saline County. So they're all right there where we'd like to transfer the case to. I get the feeling that you're not satisfied with my product liability answer, so let me go back to that for a brief moment. The whole point of the analysis of formal non-convenience is to take the individual factors of each case into bearing so that you look at what the allegations are, you look at what the proof is, you look at where the witnesses are. It is intended to be not a hard and fast rule and one that has to be allowed for each individual case to show its reason to have one venue versus another. In this particular case, a jury will not be able to understand the allegations about static building up and Mr. Heron's accident without also understanding what happened to the grounding in that building. And where will that come from, that understanding of the grounding in that building? That will come from likely Mr. Davis and Mr. Brown, likely anyone, and also likely Caterpillar, who owned it at the time. But no longer owns it. No, but they owned it at the time, so they're third-party in as well. But the whole point is that all of the people who know that and that information are all located there in Williamson County or in Saline County. Well, that's not just the White River, is it? I mean, Caterpillar is located, I think, in Decatur. Is it Decatur or Peoria? Peoria. Peoria. So Caterpillar is in Peoria, so any corporate depositions will have to be taken in Peoria. Sure. Caterpillar is secure as well, also asking for the motion. But the people who were involved in that, in designing and building that structure that burned down, still work at the plant. Caterpillar is a third-party defendant again. I know, but I'm saying that we're— Just for the record here, since we're— I want to make sure that at some point when somebody else listens to this that we understand who everybody is. Sure. That's all. Go ahead. I'm sorry to interrupt. I'm just saying that the people who were involved in making the decisions about building that building, the building that burned down in the accident, are, from what we understand, still employed at that facility. The facility changed hands from Caterpillar to Fabic, Fabic being, I believe, a manufacturer for Caterpillar. But the individuals that were involved in that still work at that facility, which is why we listed so many of the fact witnesses, employees, workers, who still work at that facility on the line in Saline or in Williamson County, but anyway, a lot closer than St. Clair, as potential witnesses. And that's part of what is supposed to be— And how does that weigh out against the plaintiff's positions in St. Louis, who are much closer to St. Clair, and all these positions that are going to talk about his damages while he was hospitalized for money loss? A couple of things, Your Honor. First, they're beyond subpoena power anyway. They're still on the other side of the state. Second, most of the time with— What does that mean? We're talking about convenience of the witnesses, so it's a lot more convenient to St. Clair for all of those positions they list than your people that you're talking about, electricians and— Which will all have to be subpoenaed as well. We'll have to weigh those is what I'm saying. Right. What I'm saying is that even if we are in St. Clair, we're still across the river from most of the doctors that are identified, so they're beyond subpoena power anyway. It's not as if having this venue in St. Clair makes it any more available for us to force a doctor to come across the river or even to appear anyway. We'd still have to commence an action in Missouri, and we'd have to force them, if they don't want to show up, to appear in another case. Also, doctors likely don't appear in person in most cases anyway. They're usually taken by video deposition. I'm assuming we can agree to take their video depositions and play it at trial, but if we're playing the doctor's video at trial, whether the doctor is in St. Louis or in Williamson County matters a lot less because we're simply taking their video. So in terms of convenience, in reality, it's not making any difference to the doctors in St. Louis, whether we try this in St. Clair County or whether we try it in Williamson County. First of all, they're experts anyway, so they'll work out whatever they need to do. But second of all, since they're beyond the subpoena power, regardless, it doesn't make anything more convenient for anybody to have the trial in St. Clair versus Williamson County if we're going to only show the videos anyway. And likely, a lot of what we're going to get from the doctors who are going to testify about what's going on currently are Williamson County residents anyway. The two places where the plaintiff is now treating, the physicians are located in Williamson County and not in St. Clair County. And that's really what all of this boils down to, to make this case different than what we've seen in Langehorst, in Indian Grove County.  Pardon me? Compare and contrast this, if you would, please, to the Lohan case. How is this different? This is different because in this case, there is no factual connection whatsoever to the chosen form. That's what makes this case different than all of the others that have been cited in which a court of appeals or the Supreme Court ruled that the plaintiff's choice of venue was acceptable. And that's what makes this case different as well. This case has no factual connection whatsoever to St. Clair County. It has lots of factual connections to Selene and Williamson. Again, either one of which would be fine. But this case stands alone from all of the others that have been discussed in the briefs and from all of the other cases that discuss poor among Canadians. You'll have some time at the end for rebuttal. Thank you, Your Honor. Thank you. What say you? May it please the Court, Counsel, Justices, good morning. As you know and have heard, we're here today. Would you state your name for the record? Oh, I'm sorry. My name is Leah Kapton, and I'm here to represent the plaintiff, George Heron. Mr. Bartholomew couldn't be here today, but I'm honored to be here before you. As you are aware, the issue before this Court involves a doctrine of forum nonconvenes. The standard of review in forum nonconvenes cases is abuse of discretion. The appellate court should only reverse where a clear abuse of discretion is found. Where the lower court failed to employ conscious judgment, ignore principles of law, and where no reasonable person would have decided in the same view. And that's the Roberts v. Illinois power case, the Fifth District case. I have a question for you, Your Honor. Sure. I appreciate the position you're in, probably not having been the one that drafted the brief. All the arguments that I believe you guys bring out is that many of the evidence, documents, and records are contained in St. Clair County in so much as they are in possession of the attorneys for the St. Clair County party. Correct. Does that matter? I mean... I mean, in today's... They got them from the places, you know, the hospitals in Missouri and other places that had records that they needed. So is it fair to assume that if you want to establish the new forum, you hire the attorney first, get out the drug, get a bunch of discovery, bring it to the office, and now you have that? No, and I don't think that's what happened here as well. I think that when the case came in, it was a products liability case. And Mr. Bartholomew saw that and engaged expert witness to review the case, and that's how it developed. It chose St. Clair County because obviously when you're filing the case, you don't know all of the facts and where all of the witnesses are when the plaintiff comes in. And I think there is a distinction between products liability cases and regular auto cases. But with today's technology, no. I mean, obviously documents can be transported. Sure. And I guess my only real question is, does it make any difference if the records are contained at the office in St. Clair County? No, except for the fact that when the defendants are... So then why is it in the brief? Because if the defendants continue, they continually argue that there's absolutely no facts whatsoever that are contained in St. Clair County, so that was just to point out that there are documents that are relevant to the case that are located... Well, it was just to point out that there is evidence in St. Clair County. That's why it was mentioned in the brief, I assume. Well, that's certainly one of the factors for the court to consider. It is. And I know there's a lot of Seventh Circuit law on this, but as far as discovery goes, the location of discovery with today's technology, as you mentioned, isn't as significant anymore because we PDF it and things like that. So I guess Justice Barbaros is concerned about why that would be such a significant point. I'm sorry. I don't think that it was a huge significant point. I think, like you said, it was just one of the factors. And it was mentioned because there is documents being stored in St. Clair County in both plaintiff's attorney's offices as well as defense attorney's offices. Let me ask you this. No reason you shouldn't be under the gun on camera. Sure. Do you know the Mowen case? I do know the Mowen case. Okay. Now, in Mowen, contrary to what the defendant just told me, the accident did not occur in Madison County. It occurred in Jersey County. There was no connection, same allegations, no connection to Jersey County. Tell me why this case is the same or different than Mowen. I can. This case is almost identical to the case at hand. The case in Mowen involves a products liability case, and if I read the case correctly, it does include negligence counts. So it is a products case coupled with a negligence count case. The case involves the plaintiff in that case was working on a water heater. When it exploded, he suffered severe and debilitating burns over his body. Oh, you're correct. There were negligence counts. This case is seriously almost identical to the case at hand, and this was a Fifth District case, as you know. So in Mowen, the plaintiff was substantially burned when the explosion occurred. He lived in Jersey County at the time. He filed suit in Madison County. The ambulance and people showed up and transferred him to a local hospital. He then was transferred to St. John's Burn Unit in St. Louis, Missouri, same as in our case. Well, just so we're all clear, it was Mercy that your client was transferred to, but that is the old St. John's? Yes, I believe so. Okay. The plaintiff in Mowen remained a patient for four months before he was transferred to a nursing home. And your client was hospitalized, what, four months? For four months before our client was transferred to a rehabilitation facility over in St. Louis, Missouri. So you have those identical facts. There were no direct witnesses to the explosion for Mr. Mowen, nor any plaintiff. You have direct witnesses? The plaintiff says there are no direct witnesses because the building in which the explosion occurred, we believe the plaintiff was the only person in the building at the time. Has anybody else come forward to your knowledge? No, not to my knowledge. So that is another similarity. The defendants in Mowen also claim that there were no factual connections whatsoever to Madison County. However, this court determined that the circuit court properly weighed all of the interest factors that are relevant and upheld the lower court's decision. In Mowen, the premises was destroyed because the explosion occurred. In Heron, the same thing happened. Now, this is a plant, so the entire plant was not destroyed, but the building in which the plaintiff was in was completely destroyed. And what case are you talking about now, this case? The Heron case, yes, ma'am. What's the Heron case? This case. Okay. Our case, Heron. Just so I'm clear, I want to make sure we're not talking about something else. Okay. So the building in which the plaintiff in this case was working in Heron was completely destroyed as a result of the explosion. Now, like I said, the plant, there's still some parts to the plant that are operating in effect, but that actual building was destroyed, and that's contained in the record. So Graco argued in their brief that a jury view would be a potential in this case, and you would dispute that, I assume. I would dispute that. Because it was destroyed. In that case, those exact facts were brought up to the circuit court when he considered the denial of defendant's motions. That was discussed. The court asked questions about the facility, asked them if the building was destroyed, and they answered that that part of it was. So that's contained in the report of proceedings of February 20th. Now, the court in Moen, the defendants continually pick apart and argue that, okay, well, where the attorneys are located should not be considered or should be given little weight. I think they say not considered, but I could be mistaken. They talk about how basically the fact witnesses are more important than the doctors and treaters that are involved in the case. Well, in Moen, this court said that those factors could be considered. They are to be considered that we have Lambert Airport. These are foreign corporations. They're going to be traveling in. What airport will they be traveling in? Likely Lambert. St. Clair County is far closer to Lambert Airport than it is for them to travel to Lambert, then drive down to St. Lino, Williamson County, which is like an hour and a half from St. Clair County. It's more convenient to the defendants, and the burden is on them. It's the defendants' burden to show that the interests of justice require transfer. It starts with the plaintiff's choice. The defendants had previously argued that the court abused its discretion when it afforded plaintiff's choice from deference. That's not the case law. The case law states that if the plaintiff does not reside in the chosen forum, that the deference should be afforded as less as opposed to none. So clearly the court did not abuse its discretion when it did consider that as a factor and did not give undue weight to that fact. Defendants then focused their arguments on Sherwin-Williams and then merely conducting business in St. Clair County. Now your client lives where? Does your client actually live in Franklin County, or was the court proceeding just in Franklin County? As far as I understand, our client does live in Franklin County. So he is not a resident of St. Lene nor Williamson County as well. Okay, and his court guardian is Franklin County, or the court proceeding is Franklin County. I believe so. So defendants argue that the court abused its discretion when it considered the fact that defendant Sherwin-Williams owned and operated stores within St. Clair County. They argue that venue, that that factor should only be considered in the venue challenge. Now prior to the forum non-convenes motion being heard by Judge Colker, in the beginning of those proceedings, defendants withdrew their challenge to venue and conceded to the fact that venue was appropriate in St. Clair County. Now if Judge Colker simply... Well, venue is, we have three stores under the venue statute. I mean, it is proper. They conceded that, right? Correct, right. It was before the forum non-convenes proceedings continued. So during the proceedings, they conceded venue at the beginning of the proceedings. If Judge Colker only considered the fact that defendant did business in the county as the reason for making its decision on forum, then he would have not continued on with the hearing and written a lengthy formal order discussing the private and public factors required. His order is 14 to 15 pages long. So clearly he could... He has every factor listed in his order. He does. I think that goes to show that he did consider all of the facts relating to the case. He had multiple oral arguments on the issue. We had multiple briefings. We supplied the court with additional facts. You know, I do have a question about that. You know, this process from the time your first complaint was filed until the order was entered was a 32.5-month delay. Now, when we look at the court statistics on delays and how fast you can get to trial, do you think that form non-convenience motions of 32.5 months are figured in? I do not. I feel like that is a reason why the judge acknowledged that this court statistics can be helpful and useful. However, there are other factors that go into that time frame from when the case is originally filed to when it makes it to trial. And furthermore... I'm not sure I understand your answer. So are you telling me that this 32.5 months is added in to... I mean, it has to be added in to the progress of the case, right? I think it is added in to the progress of the case, but I don't think that it really relates to court congestion. I don't think it's a court congestion issue on why this case has taken so long. I think the defendants point... No, I understand what you're saying. I think the defendants point to that. But if you look at the procedural bracket of the case, the complaint was filed, motions were filed, the responses were filed. The defendants fail to point out that the case was removed to federal court, where it remained pending for approximately six months before it was remanded back. The motions were brought back up. Oral arguments were had. So I don't think that goes to court congestion. So the records that are cited, 66.9 months for a case to get through Sinclair County, as opposed to 30 months, 30.7 months in Williamson County. Just so I'm clear on what Justice Cates asked. If you take that as true, 66 months, would that include the 30 months that it took to get the form of nonconvenience motion order? Yes, I think so. So we're not looking at 96 months. No, I'm sorry, I misunderstood Justice Cates' question. Yeah, I mean, part of the reason we see congestion in some of these major counties, it seems like is that they have more form of nonconvenience motions. Absolutely. So when I look at and I calculate this one, for example, it took 32.5 months just to get the order, even though the first form of nonconvenience motion was filed by Campbell Housefield on April 2nd, which was less than two months after the complaint was filed. So is it in the record that there was removal to federal court? I believe it is in the record that there was removal to federal court, but if not, I did look that up to make sure it was, and I think it was approximately a six-month period before it was remanded back. Is it not in the record? No. I'm just wondering, the only reason that could be is if somebody claimed that there was fraudulent joinder. There was a claim for fraudulent joinder, yes. So more delay. And that was before I was involved in the case, so I'm almost positive, but I don't want to mislead the court, so. I understand. Okay. That's okay. You can continue with your argument. And as far as the court congestion goes as well, I think that people that have practiced in front of Judge Corker know that you can get a trial date really as readily available as you would like. So I don't think court congestion is an issue. I would also like to point out that I think maybe one of the reasons why defendants filed chose to remove the case to Williamson County is because if you compare the court statistics to, say, Lane County and St. Clair County, they're almost identical. So Lane County takes 60-some months too. And I think a products liability case, a complex products liability case, they're difficult to try. So if you force everyone to go to a smaller county, I think it disrupts the judicial system as well because they don't have as many judges to hear the case and they last longer. So sometimes they have to bring in another judge to hear the case. So regardless, the pronouncements of our Supreme Court say that judicial statistics are not the controlling factor and should be given less weight even than some of the other public and private interest factors. So my question to all of you is why do you keep attaching over and over the same court statistics? Has nobody ever heard a reference back? I mean, you know, this record is full of court statistics. I mean, page after page after page and over and over and over again. I don't understand it, but that's just a commentary. I don't believe that we supplied them. I think we might have supplied one page to show them. Well, I'm not laying blame. I'm just saying that we're seeing it as a court. We're seeing it a lot. We see the record gets just overbaloneness with these court statistics. I think the court has probably received so many forum non-convened motions that their time could be and I think one of the cases referred to that, that these motions take up a lot of the court's time, the appellate court's time and how the resources could be spent more useful on cases that are fully litigated and that's why the court instructed the lower courts to really carefully consider the factors and to apply the factors as the Supreme Court set out for them. And I think Judge Coker did that in this case. I think it's evident by the oral arguments that took place as well as the 14-15 page order that states all of the factors. So in sum, the plaintiff is here today to ask that this court deny defendant's motion to deny defendant's appeal to overturn the lower court's decision and that Judge Coker carefully considered all of the relevant factors and that the role of the appellate court is not to substitute the judgment for that of the circuit court or even to determine whether the circuit court exercised its discretion wisely. Rather, the court's task is to determine if the circuit court abuses discretion in the absence of abuse, the decision of the circuit court will not be served on review. And that was the Elling case and I think that this case is so closely related to Moen. And Moen is still a big law and it's just so factually similar in the case of how the lower court's decision to deny defendant's appeal in that case as well. Okay. Thank you very much, Roberto.  Are you changing over to the midstream? We'll have to, just a second, please. Usually leave has to be granted to do that, but my colleagues say fine. Thank you, Your Honor. No problem. My name is John O'Connor. I represent Campbell Hospital in this case. I have a short period of time to speak, so I'll try to get as much out as I can. Your Honor, I talked about the Moen case. The Moen case is 25 years old. The Supreme Court has ruled on format convenience at least five or six times since Moen. There's a couple of aspects of Moen. And not one has, once has Moen that I could find been distinguished, poorly, you know, cited for its poor reasoning. Your Honor, I agree. I couldn't find that. It's a short decision. There's very little discussion in Moen how a court reaches opinion. But if you look at Moen carefully, you'll find that this involved a water heater that exploded in Jersey County. The case was filed in Madison. The court noted at the very beginning that the main issue in the case was whether the director friend at Illinois Valley Supply to put an odorant in the propane tank so as to alert the plaintiff of the leaking gas. The court also pointed out through limited discovery that a company named CBI was the entity that was responsible for putting the odorant in the tank. And CBI, coincidentally, was located out of Madison County. So that was a huge link to Madison County in order for that case to progress in Madison County. The next three quarters of the decision in Moen is all discussing whether Madison County is a better jurisdiction to try the case than Jersey. And the court went on to point out that Jersey only had two trials over a year period when Madison had 76. And those two trials in Jersey took 68 months while in Madison County it was only 41 months. So just based upon the short amount of time that the case would get to trial in Jersey, that Jersey didn't have a jury pool that came in readily day by day. You recall that was the court's discussion. The court essentially found that Jersey County was not ready to try a case that size. That is not the situation here. How do we know that Williamson County is and how do we, why not Saline? I mean, you've left us with the very difficult task now of saying that the court abused its discretion in this 15-page order and we should move it to Williamson even though the accident did not occur in Williamson. So are we to rebalance the factors that the judge used? Well, I think this is a unique situation where when this accident occurs, literally on the bowel corridor between Williamson and Saline County, you have to factor in the convenience of the witnesses. You don't think that was done in this case? I do not, no, Your Honor. There was not one witness that was located in St. Clair County. I understand. Not one piece of evidence. No, I understand, but just a moment, let me ask you. In Judge Polker's order, he went through in his analysis and listed, which I was really surprised about, because I've never seen an order like this, this detailed. But on page 7 and 8 and 9, he took the time to list every witness that had been proffered by both sides and did some weighing of each and every witness. Right, and all the witnesses. Now, how did he abuse his discretion in that? All the witnesses the plaintiff relied upon and Judge Polker must have relied upon in reaching his ruling were all medical witnesses. All of the factual witnesses are located in Williamson County, Saline County, or within close proximity of those two counties. The evidence that was presented through discovery, and not just stated in briefs, established that all of the occurrence witnesses are located in Williamson County. The main witnesses in this case. You're not quite right about the weighing of the witnesses. They were not all medical witnesses. We have the State Fire Marshal from Springfield, which is Sangamon County. No, and Your Honor, if I may interject. He was officed in Springfield, but he has now since retired. His name is David Bandera. He now lives in Williamson County, and that was put in Graco's brief. Well, I'm looking at the order. So, whatever was put in the brief, are you going to tell me that's in the record? Yes, it is, Your Honor. Okay, so you're saying he abused his discretion on page 8 when he talked about David Bandera. The fact that Mr. Bandera has retired and lives in Williamson County, and he is the prime investigator for State Marshal, yes. And does he have the records of his investigation? Yes, we have those subpoenaed, and we would show them to him. Where were they subpoenaed from? The State Fire Marshal's office. Springfield, Illinois? Right, so nobody's going to go to Springfield. Please do not interrupt me. The order on page 8 talks about that, and that was my question. The report regarding the incident. Chris Valentine, where does he live? He's with the State Fire Marshal. He signed off on the report. Mr. Bandera was the main investigator. Where does he live? Mr. Bandera lives in Williamson. No, Chris Valentine. Thank you very much for your arguments. We're going to take this matter under advisement. And in order of issuing due course, thank you all for coming.